# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
June 16, 2022

Lyle W. Cayce
Clerk

———————

No. 20-11082

———————

MICHAEL DURBOIS,

*Plaintiff—Appellant*,

*versus*

DEUTSCHE BANK NATIONAL TRUST COMPANY, *as Indenture Trustee, For the Benefit of* THE HOLDERS OF AAMES MORTGAGE INVESTMENT TRUST 20054 MORTGAGE BACKED NOTES,

*Defendant—Appellee*,

*versus*

LORI ANN DURBOIS,

*Third Party Defendant—Appellant*.

———————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:19-cv-1056

———————

Before JOLLY, HAYNES, and OLDHAM, *Circuit Judges*.

ANDREW S. OLDHAM, *Circuit Judge*:

The question presented in this diversity case is whether the amount in controversy exceeds $75,000. It does not. This case therefore must be remanded to state court.

I.

In 2005, Michael Durbois took out a home equity loan on a house in Texas ("Property"). Deutsche Bank National Trust Company ("Deutsche Bank") is the trustee of the loan. In March 2019, Deutsche Bank sought a non-judicial foreclosure order on the Property.

On December 2, 2019, Durbois sued Deutsche Bank in Texas state court, alleging violations of the Texas Debt Collection Act ("TDCA"), breach of the common-law duty of cooperation, fraud, and negligent misrepresentation. In his original petition and in a declaration, Durbois "stipulate[d]" that he is seeking total damages not to exceed $74,500.

Despite the stipulation, Deutsche Bank removed the case to federal district court. In the notice of removal, Deutsche Bank stated that Durbois's suit automatically stayed the bank's non-judicial foreclosure sale and hence put the value of the house—$427,662—in dispute. Deutsche Bank also provided evidence of the house's value.

Durbois then moved to remand the case back to Texas state court because, in his view, the amount in controversy could not exceed the stipulated maximum of $74,500. On February 19, 2020, the district court denied Durbois's motion to remand. The court recognized that, in state court, Durbois "state[d] that he seeks damages in 'an amount less than $74,500.'" But it concluded that statement was insufficient. That was because the court had to measure the amount in controversy "by the value of the object of the litigation," not what "the complaint states th[e] damages are 'not to exceed.'" The court determined that the house was the object of

the litigation because Durbois's lawsuit triggered an automatic stay of the Property's non-judicial foreclosure. It then concluded that Deutsche Bank carried its burden by providing sufficient evidence that the Property's value was $427,662 and thus more than the jurisdictional threshold of $75,000.

The case moved forward. And eventually, the district court entered final judgment in favor of Deutsche Bank. Durbois timely appealed, challenging only the district court's denial of his motion to remand. We have appellate jurisdiction under 28 U.S.C. § 1291. Our review is *de novo*. *Hoyt v. Lane Constr. Corp.*, 927 F.3d 287, 292 (5th Cir. 2019).

## II.

The general diversity-jurisdiction statute provides in relevant part that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs and is between . . . citizens of different States." 28 U.S.C. § 1332(a). Section 1332 does not provide further guidance on how to determine the amount in controversy.

But other statutory provisions do. Most relevant here is § 1446(c)(2). It provides:

> (c) Requirements; removal based on diversity of citizenship.—
>
>      . . .
>
>      (2) If removal of a civil action is sought on the basis of the jurisdiction conferred by section 1332(a), the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy, except that—
>
>> (A) the notice of removal may assert the amount in controversy if the initial pleading seeks—
>>
>>> (i) nonmonetary relief; or
>>>
>>> (ii) a money judgment, but the State practice either does not permit demand

> for a specific sum or permits recovery of damages in excess of the amount demanded; and
>
> (B) removal of the action is proper on the basis of an amount in controversy asserted under subparagraph (A) if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a).

28 U.S.C. § 1446(c). Paragraph (2) thus sets a general rule that "the sum demanded in good faith in the initial pleading" is "the amount in controversy." *Id.* § 1446(c)(2). It then provides two exceptions to that general rule: (i) the plaintiff's operative state-court pleading at the time of removal seeks nonmonetary relief; or (ii) that pleading seeks a money judgment, and the State "does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded." *Id.* § 1446(c)(2)(A).

If either exception is shown, then "the defendant's [plausible] amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014) (interpreting 28 U.S.C. § 1446(c)(2)(B)). When the defendant's allegation is questioned, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 88.

## III.

The dispositive question is whether the amount in controversy exceeds $75,000. The answer is no. That's for two independent reasons: (A) Deutsche Bank failed to establish by a preponderance of the evidence that the amount in controversy exceeded $75,000. And (B) Durbois stipulated

before removal that the amount in controversy was $74,500—*i.e.*, below the jurisdictional requirement.

## A.

First, Deutsche Bank failed to establish by a preponderance of the evidence that the amount in controversy was over $75,000.[*] Deutsche Bank submitted evidence of the Property's value, which obviously exceeded the jurisdictional threshold. But Deutsche Bank failed to show that the automatic stay at issue here put the house's value in controversy.

### 1.

The amount in controversy is "not proof of the amount the plaintiff will recover" but "an estimate of the amount that will be put at issue in the course of the litigation." *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008) (McConnell, J.). The amount is measured by the value of the object of the litigation. *See, e.g.*, 14AA Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3702.5 (4th ed.) [hereinafter Wright & Miller] ("It is well-settled . . . that the amount in controversy for jurisdiction purposes is measured by the direct pecuniary value of the right that the plaintiff seeks to enforce or protect or the value of the object that is the subject matter of the suit."); *id.* § 3708 (similar); *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977) ("[I]t is well established that the amount in controversy is measured by the value of the object of the litigation."); *Farkas v. GMAC Mortg., LLC*, 737 F.3d 338, 341 (5th Cir. 2013) (per curiam). Durbois seeks money damages not to exceed $74,500 for various violations of his rights under Texas state law; he does not seek specific relief. The object of Durbois's litigation is thus money damages, and those money damages are below the jurisdictional floor of $75,000.

---

[*] We assume without deciding that 28 U.S.C. § 1446(c)(2)(A)(i) is satisfied and hence that "the notice of removal may assert the amount in controversy."

Deutsche Bank doesn't contest that if the suit's object is the money damages, the amount in controversy is insufficient to support federal jurisdiction.

Instead, Deutsche Bank notes that Durbois's suit triggered an automatic stay of its non-judicial foreclosure under state law; that stay, Deutsche Bank argues, put the value of the house in dispute, and hence made the house the *real* object of the litigation. Durbois responds that the stay is *collateral* to the object of his litigation and thus irrelevant to the amount in controversy. *See, e.g.*, *Garcia v. Koch Oil Co. of Tex. Inc.*, 351 F.3d 636, 640 (5th Cir. 2003) (holding amounts "collateral to the true object of the litigation" do not affect amount in controversy); *Healy v. Ratta*, 292 U.S. 263, 268 (1934) ("It has been said that it is the value of the object of the suit which determines the jurisdictional amount in the federal courts. But this does not mean objects which are merely collateral or incidental to the determination of the issue raised by the pleadings." (quotation omitted)). It is well-settled that neither the collateral effect of a suit nor the collateral effect of a judgment may count toward the amount in controversy. *See, e.g.*, *New England Mortg. Sec. Co. v. Gay*, 145 U.S. 123, 130 (1892) ("It is well settled in this court that, when our jurisdiction depends upon the amount in controversy, it is determined by the amount involved in the particular case, and not by any contingent loss either one of the parties may sustain by the probative effect of the judgment, however certain it may be that such loss will occur."); *Town of Elgin v. Marshall*, 106 U.S. 578, 579 (1883); 14AA WRIGHT & MILLER § 3702.5 ("[W]hatever the collateral effects a decree or judgment might have by virtue of stare decisis, collateral estoppel, or any other impact on the rights or interests of third parties, those consequences cannot be taken into account in calculating the amount in controversy.").

We agree with Durbois and hold the automatic stay is collateral for three reasons. First is the way the stay is triggered. Under Texas Rule of Civil Procedure 736.11(a), a non-judicial foreclosure sale is automatically stayed when the relevant party in the foreclosure proceeding files a separate suit

involving the matter. The automatic stay here is thus triggered by the filing of Durbois's suit itself—that is, the stay's issuance is detached from the suit's outcome. And if the collateral effect of a *judgment* may not count toward the amount in controversy, *see New England Mortg.*, 145 U.S. at 130, then the collateral effect of *filing the suit* certainly may not.

Second is what the stay does. The automatic stay here is temporary regardless of the suit's outcome and does not determine ownership of property. No matter the outcome, the stay disappears as soon as the litigation ends. By contrast, injunctions, declaratory relief, and other specific relief result from a judgment that definitively resolves the parties' rights and are generally permanent.

Compare, for example, cases involving deeds of trust and equitable title. When a party seeks such specific relief, the litigation can call into question "the validity of a contract or a right to property . . . in its entirety." *Waller v. Pro. Ins. Corp.*, 296 F.2d 545, 547–48 (5th Cir. 1961); *see also, e.g.*, *Tu Nguyen v. Bank of Am., N.A.*, 539 F. App'x 325, 326–27 (5th Cir. 2013) (per curiam) (noting that the amount in controversy was the value of the relevant property where the plaintiff had sought to quiet title of the property); *Nationstar Mortg. LLC v. Knox*, 351 F. App'x 844, 848 (5th Cir. 2009) (per curiam) (concluding that the amount in controversy included the relevant property where plaintiffs "sought rescission and cancellation of the deed of trust, cancellation and removal of clouds from title, and a preliminary and permanent injunction . . . to prohibit . . . foreclosure"). For this reason, when a party seeks a deed of trust or equitable title, the suit's direct object is the value of the property or contract. *See* 14AA WRIGHT & MILLER § 3702.5 ("If suit is brought to quiet title to land or to a leasehold interest in land, and the cloud affects the entire title, then the value of the property or the leasehold interest the plaintiff seeks to protect is the measure of the amount in controversy. If the entire title is not in issue, the amount in controversy is the difference in the value of the land or leasehold interest with

the cloud and its value with the cloud removed." (quotation omitted)). Here, by contrast, the automatic stay doesn't permanently alter anyone's rights at all. The house thus isn't the suit's direct object.

Third is that the stay is avoidable. Under Texas state law, there are multiple ways to foreclose on a property. Deutsche Bank chose to pursue non-judicial foreclosure. But it also had the option of seeking a "judicial foreclosure" under Texas Rule of Civil Procedure 735.3. That type of foreclosure would not be automatically stayed because the Rule 736.11 stay operates only against non-judicial foreclosures. Deutsche Bank did not take that route—and hence it exposed itself to the automatic stay. It would be strange to call the automatic stay a direct (rather than collateral) effect of Durbois's suit when the bank could've avoided it.

We therefore hold that Deutsche Bank's evidence of the Property's value does not establish an amount in controversy that exceeds $75,000.

2.

We briefly address two additional counterarguments raised by Deutsche Bank.

First, the bank points out that Durbois's suit requested relief "including but not limited to" damages, which might be read to suggest Durbois also sought injunctive relief. But the bank makes that argument only to establish that Durbois's initial pleading seeks nonmonetary relief (28 U.S.C. § 1446(c)(2)(A)(i))—not to establish that the requested nonmonetary relief put the house in controversy (28 U.S.C. § 1446(c)(2)(B)). Whatever the merit of that latter contention might otherwise be, we hold that Deutsche Bank forfeited it. "Arguments . . . in favor of jurisdiction[] can be forfeited or waived." *Ctr. for Biological Diversity v. EPA*, 937 F.3d 533, 542 (5th Cir. 2019). And here, Deutsche Bank did not make the including-but-not-limited-to argument with respect to subparagraph (B) before the district court or in its brief before this court. *See United States ex rel. Drummond v. BestCare*

*Lab'y Servs., LLC*, 950 F.3d 277, 285 (5th Cir. 2020) ("That argument was not raised in the district court, so it is forfeited."); *United States v. Vasquez*, 899 F.3d 363, 380 n.11 (5th Cir. 2018) (concluding that appellant's "failure to clearly identify [an argument] as a potential basis for relief forfeits the argument on appeal").

Second, Deutsche Bank argues that the sum Durbois demanded in his initial pleading was not made in good faith because it violated Texas Rule of Civil Procedure 47 by specifying a sum just below the jurisdictional floor. Deutsche Bank forfeited this contention in the district court. *See BestCare*, 950 F.3d at 285.

And in any event, Deutsche Bank is wrong. Texas Rule of Civil Procedure 47 provides in relevant part:

An original pleading . . . shall contain:

(a) a short statement of the cause of action sufficient to give fair notice of the claim involved;

(b) a statement that the damages sought are within the jurisdictional limits of the court;

(c) except in suits governed by the Family Code, a statement that the party seeks:

(1) only monetary relief of $250,000 or less, excluding interest, statutory or punitive damages and penalties, and attorney fees and costs;

(2) monetary relief of $250,000 or less and non-monetary relief;

(3) monetary relief over $250,000 but not more than $1,000,000;

(4) monetary relief over $1,000,000; or

(5) only non-monetary relief; and

No. 20-11082

> (d) a demand for judgment for all the other relief to which the party deems himself entitled.

> Relief in the alternative or of several different types may be demanded; provided, further, that upon special exception the court shall require the pleader to amend so as to specify the maximum amount claimed. A party that fails to comply with (c) may not conduct discovery until the party's pleading is amended to comply.

TEX. R. CIV. P. 47. Nothing in the plain text of this Rule prevents a plaintiff from demanding damages up to but no higher than a stated amount.

Deutsche Bank relies on our interpretation of Rule 47 in a case from 27 years ago. *See De Aguilar v. Boeing Co.*, 47 F.3d 1404 (5th Cir. 1995). But it ignores that the Rule was amended in 2013—after *De Aguilar*. And the 2013 amendment is critical. Before the amendment, Rule 47 stated: "An original pleading . . . shall contain . . . in all claims for unliquidated damages *only* the statement that the damages sought are within the jurisdictional limits of the court." TEX. R. CIV. P. 47(b) (1990) (emphasis added). After the amendment, there's no "only." And such "a significant change in language is presumed to entail a change in meaning." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 256 (2012). Even more, after the amendment, Rule 47 contemplates pleadings that "specify the *maximum* amount claimed." TEX. R. CIV. P. 47 (emphasis added). This further indicates that Rule 47 permits the claiming of specific sums. Deutsche Bank provides no textual evidence to overcome those clues.

Moreover, the mere fact that Durbois pleaded a demand for specific damages cannot support bad faith. That would contradict the well-established principle that "the plaintiff is 'the master of [his] complaint.'" *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831 (2002) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398–99 (1987)); *see also, e.g.*, *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1355 (2018); *Amgen Inc.*

*v. Harris*, 577 U.S. 308, 311 (2016); *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013); *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 94 (2005); *Elam v. Kansas City S. Ry. Co.*, 635 F.3d 796, 803 (5th Cir. 2011); *Bernhard v. Whitney Nat'l Bank*, 523 F.3d 546, 551 (5th Cir. 2008); 14C WRIGHT & MILLER § 3722 (Rev. 4th ed.) (noting "the plaintiff's traditional prerogative to select the forum . . . as the master of the complaint"). There's nothing wrong with a plaintiff's desire to litigate his claims in state court. Those courts are generally the equals of federal ones, and when it comes to questions of state law specifically, the state courts are superior. *See* HENRY J. FRIENDLY, FEDERAL JURISDICTION: A GENERAL VIEW 149–52 (1973).

## B.

Durbois also stipulated that the amount in controversy is less than the jurisdictional requirement. So even if Deutsche Bank's evidence did support its asserted amount, the district court still lacked jurisdiction.

## 1.

Although parties may not *consent* to jurisdiction, a party may *stipulate or admit* to *facts* underlying jurisdiction. As the Supreme Court put it long ago: "Consent of parties cannot give the courts of the United States jurisdiction, but the parties may admit the existence of facts which show jurisdiction, and the courts may act judicially upon such an admission." *Ry. Co. v. Ramsey*, 89 U.S. (22 Wall.) 322, 327 (1874); *see also Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541 (7th Cir. 2006) ("Jurisdiction itself is a legal conclusion, a *consequence* of facts rather than a provable 'fact.'"); *McPhail*, 529 F.3d at 954 (same). Our circuit, along with many of our sister circuits, has concluded that parties may stipulate to facts that bear on jurisdiction. *See, e.g.*, *Hogar Agua y Vida en el Desierto, Inc. v. Suarez-Medina*, 36 F.3d 177, 182 n.4 (1st Cir. 1994); *Meyer v. Berkshire Life Ins. Co.*, 372 F.3d 261, 265 (4th Cir. 2004); *EEOC v. Serv. Temps Inc.*, 679 F.3d 323, 330 (5th Cir. 2012); *Ferguson v. Neighborhood Hous. Servs. of Cleveland, Inc.*, 780 F.2d 549, 550–51 (6th Cir. 1986); *Tilden v. Comm'r of Internal Revenue*, 846 F.3d

882, 887 (7th Cir. 2017); *Verzosa v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 589 F.2d 974, 977 (9th Cir. 1978); *Aptive Env't, LLC v. Town of Castle Rock*, 959 F.3d 961, 973 n.5 (10th Cir. 2020); *United States v. Obando*, 891 F.3d 929, 938 (11th Cir. 2018).

The amount-in-controversy requirement is no exception. The Supreme Court in 1938 emphasized that "[i]f [the plaintiff] does not desire to try his case in the federal court[,] he may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 294 (1938). Recently, the Supreme Court reaffirmed that principle: "[F]ederal courts permit individual plaintiffs, who are the masters of their complaints, to avoid removal to federal court, and to obtain a remand to state court, by stipulating to amounts at issue that fall below the federal jurisdictional requirement." *Standard Fire*, 568 U.S. at 595. "[T]he key characteristic about those stipulations is that they are legally binding on all plaintiffs." *Ibid.*

These stipulations can be binding even when the defendant disputes them. That's because when the plaintiff states the *fact* that it is not seeking more than a particular amount and that it will not accept more than that amount, the *legal consequence* is that the court may not order more than that amount. The binding nature of the plaintiff's statement does not depend on the defendant because in these circumstances, the amount in controversy turns only on (a) the plaintiff's demand and (b) the trial court's ability to limit the plaintiff to that demand.

2.

Durbois's stipulation is legally binding. In his state-court petition, Durbois expressly stated:

> **Stipulation:** Plaintiff hereby stipulates that all damages Plaintiff seeks to recover from Defendant, including but not limited to actual damages, emotional distress damages,

exemplary damages, attorneys' fees, and costs of court is an amount less than $74,500.

And in a declaration, he "stipulate[d] that [he is] seeking total damages, including costs of court and attorneys' fees, in an amount not to exceed $74,500." The best reading of these two statements is that Durbois is seeking—and will accept—no more than $74,500.

Deutsche Bank claims these statements are insufficient. We don't see why. Durbois used two forms of the word "stipulation" and even bolded it once. A reasonable reader would understand that Durbois was limiting not only what he demanded but what he would accept from the suit. Perhaps Deutsche Bank thinks Durbois "should have used CAPITAL LETTERS . . . [o]r maybe . . . should have added: 'And [I] really mean it!!!'" *Andrus v. Texas*, 140 S. Ct. 1875, 1888 (2020) (Alito, J., dissenting). But we don't think such measures are necessary.

Texas law confirms as much. The Texas Supreme Court has long held that "[a] judgment for money damages in excess of the amount pleaded cannot be supported and accordingly the judgment of the trial court should be reformed" if it does not. *Socony-Vacuum Oil Co. Inc. v. Aderhold*, 240 S.W.2d 751, 756 (Tex. 1951); *see also Standard Fire Ins. Co. v. Morgan*, 745 S.W.2d 310, 312 (Tex. 1987) ("Of course, a jury could not award Morgan a greater average weekly wage rate than the rate she pleaded."). And Texas Rule of Civil Procedure 301 provides that "[t]he judgment of the court shall conform to the pleadings, the nature of the case proved and the verdict, if any, and shall be so framed as to give the party all the relief to which he may be entitled either in law or equity." Plus, we take Durbois's statement in his brief that he "stipulated to be *bound* to total damages less than the jurisdictional threshold" as ample clarification of what we already viewed as the best reading of the stipulations.

The preclusion doctrines reinforce our conclusion. *See Arnold v. State Farm Fire & Cas. Co.*, 277 F.3d 772, 775 n.3 (5th Cir. 2001) (concluding that

13

"the affidavits preclude [the plaintiffs] from seeking damages in excess of that amount in state courts either as a judicial admission, judicial estoppel or a matter of preclusion." (citing *Bogle v. Phillips Petroleum Co.*, 24 F.3d 758, 762 (5th Cir. 1994))); *Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1046 (9th Cir. 2003) ("We remand in reliance that [the plaintiff] will adhere to this promise, as well as to the characterization of the complaint which he offered to us, since judicial estoppel bars a party from taking inconsistent positions in the same litigation." (quotation omitted)); *cf. Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999) (suggesting, because of issue preclusion, that "[i]f a federal court dismisses a removed case for want of personal jurisdiction, that determination may preclude the parties from relitigating the very same personal jurisdiction issue in state court" (citing *Baldwin v. Iowa State Traveling Men's Ass'n*, 283 U.S. 522, 524–27 (1931))). Durbois has promised that he will not accept more than $74,500. And our determination that the district court lacked subject-matter jurisdiction relies in part on that promise. That is enough to make the promise binding.

\*　　　\*　　　\*

Deutsche Bank failed to establish that the amount in controversy exceeds the jurisdictional floor of $75,000. The district court therefore erred in denying Durbois's motion to remand, and it lacked subject-matter jurisdiction when it entered final judgment. For the foregoing reasons, we REVERSE and REMAND the case with instructions to remand the action to Texas state court.